(No. 2288—

JOHN WALKER, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed May 10, 1939.*

HARRY S. GREENSTEIN, for claimant; HARRY F. BREWER, of counsel.

JOHN E. CASSIDY, Attorney General; MURRAY F. MILNE, Assistant Attorney General, for respondent.

MR. JUSTICE YANTIS delivered the opinion of the court:

Claimant herein was a member of the Illinois National Guard and seeks an award in the sum of Four Thousand ($4,000.00) Dollars under the provisions of the Illinois Military & Naval Code, for injuries alleged to have been suffered while in the performance of his duties as such member.

The record discloses that he enlisted about June 27, 1930, and on February 8, 1933 was a member of the Combat Battery in the 122nd Field Artillery, 33rd Division of the Illinois National Guard; that the training and drilling exercises of the battery were conducted in an Armory maintained by the State of Illinois; that the roof was in bad repair and rain and melting snow would leak through and fall on the floor of the Armory building. While engaged in drill duties the horse which claimant was riding and which had been furnished to him by his commanding officer, slipped on the wet floor and fell in such manner that the horse's weight was on claimant's leg and foot. Claimant suffered four fractures of the left foot. He was taken to the hospital where his injured foot was placed in a cast, in which it remained for about six weeks. Claimant thereafter required the aid of a crutch or cane in walking for a period of four months, and there is now a fixed limitation of motion of the foot and ankle which the evidence shows is probably a permanent condition, and in addition thereto there is a deformity that is commonly known as "flat-foot." Plaintiff's testimony shows that he suffered a great deal of pain during the course of the healing of said injuries, and that he wore an elastic stocking around his ankle and foot for a period of two years, on advice of the attending doctor. Dr. Frank V. Theiss, a member of the National Guard, examined claimant at the time he was injured and attended him at that time. He testified that he saw claimant from time to time after he was discharged from the hospital; that a month or two after claimant left the hospital he attended drill and did not have a cane or crutch but walked with a limp; that he, Dr. Theiss, examined claimant on April 17, 1937 at which time claimant's attorney was present, and that he did not observe any limp upon claimant's part when the latter entered the room. This examination, according to the doctor, disclosed that there was no limitation in the movement of the ankle, and circulation in the foot was normal; that flatfoot is not an infrequent occurrence following injuries of this type. The doctor further testified that he found no limitation in flexion, extension or lateral movement of the left ankle compared with the right ankle; that he caused additional X-rays to be taken and on comparison with the X-rays made four years previously, excellent healing of the fractures was disclosed with no lipping or any abnormal pathological

exastosis. Dr. Theiss explained conflicting opinions as disclosed in the testimony of another surgeon, Dr. Ricardo, by explaining that certain bony enlargements referred to in the latter's testimony involved bones other than those where the fractures occurred, and were merely normal anatomical parts of the structure of claimant's foot. In the doctor's opinion claimant has not lost any part of the use of his left leg. Dr. Theiss saw claimant on the street a number of times and at the Armory frequently. The doctor further testified that flatness of the foot is often due to the laceration of ligaments, tendons and muscles resulting from broken bones of the foot; that if no improvement takes place in the strengthening of such flatfoot within a year no improvement can be expected thereafter; that every precaution was taken in Mr. Walker's case to avoid flatfoot but that it was impossible to avoid some weakening of the arch; that the condition existing would be permanent and would possibly render claimant less able to do heavy work.

Dr. Ricardo testified that he examined claimant in his office on October 9, 1933 not as a treating physician but for the purpose of making a diagnosis; that at that time there was some interference with the blood supply of the lower left leg, a bony outgrowth on the top of his foot on the instep where the fracture of the two bones existed, and a limitation of motion of the ankle joint upon flexion, extension and lateral movement; also a difference of about fifty degrees in the arch of the left and right feet. He next saw claimant four years later on March 7, 1936, at which time he found a slight decrease in the bony outgrowth on the top of the foot; that an atrophy of the muscles of the calf of the left leg existed and the latter was about three-fourths of an inch less in circumference than the calf of the right leg; that he again examined claimant on March 7, 1936, the date of the hearing; that in his opinion the limitation of motion in the ankle and foot, and the condition of flatfoot are all permanent, and that claimant has lost fifty (50) per cent of the use of his foot and leg.

The X-ray examination report of February 9, 1933 at St. Joseph's Hospital in Chicago shows the following fractures:

A fracture involving the internal malleolus of the left tibia.

A comminuted fracture involving the external malleolus of the left fibula.

A comminuted fracture involving the proximal end of the second metatarsal of the left foot, extending into the joint, with fragment displacement.

A fracture involving the proximal end of the third metatarsal of the left foot.

Dr. Theiss further testified that a year after the injury he saw claimant taking an active part in the regimental drills and that the condition of claimant as he, Dr. Theiss, found it in April, 1937, was not such as in his opinion would cause a loss of any part of the use of claimant's leg, ankle or foot. On cross-examination Dr. Theiss qualified this statement however by stating that anyone with a degree of flatfoot will suffer some weakness and fatigue, and that claimant would possibly be less able to do heavy work as a result thereof. Both Dr. Theiss and Dr. W. E. Anspach certified under date of April 10, 1937 to the X-ray examination of claimant, and stated that apparently perfect apposition and alignment have been maintained in the healing of the left ankle, and that good bony union has occurred at the fracture sites with approximately one-half cm. prominence of the proximal end which overlaps the second metatarsal.

With respect to claimant's occupation and work, his testimony shows that prior to the time of the injury in question he was employed as a solderer for the Grigsby-Grunow Refrigeration Company, but had been laid off about a week previously because of slack business. That he earned an average of Forty ($40.00) Dollars to Forty-five ($45.00) Dollars per week; that his next work, about a year after his injury, was with the Kraft Cheese Company loading freight cars; that the weight on his foot was too great and he was given a job operating the freight elevator. He held this job for about a month and his salary averaged Eighteen ($18.00) Dollars per week. He next became employed in December, 1934 by the Belke Manufacturing Company where he was still employed at the time he gave testimony herein. At present he is employed as a machinist on line work with wages of Twenty-two ($22.00) Dollars per week. He is required to stand while doing this work and at times requires help in doing heavy lifting, because of the pain in his foot.

The Military & Naval Code of Illinois contains the following provision:

"In every case where an officer or enlisted man of the National Guard or Naval Reserve shall be injured, wounded or killed while performing his duty as an officer or enlisted man in pursuance of orders from the commander-in-chief, said officer or enlisted man or his heirs or dependents, shall have a claim against the State for financial help or assistance, and the State Court of Claims shall act on and adjust the same as the merits of each case may demand." *Sec. 143* (Ch. 129 Ill. Rev. Statutes).

Claimant was injured February 8, 1933. As above stated, he was not then working but had been employed at Forty-five ($45.00) Dollars per week in his last employment. His enlistment in the National Guard expired in June, 1933 and he then re-enlisted. He was discharged in May, 1934 and again re-enlisted in July, 1934 and attended camp in August of that year. When first employed after his accident in May, 1934 his average earnings were Eighteen ($18.00) Dollars per week. His highest earnings since the accident have been Twenty-two ($22.00) Dollars per week. The employment which he has done since his injury has apparently necessitated more heavy labor than that which he was doing before his injury, and the record does not support a finding that he is not able to earn as substantial wages now as prior to the accident, by reason of the results of such accident, and the record does not support a conclusion and an award of such permanent disability as would entitle claimant to an award for permanent disability.

The claimant was treated by doctors furnished by the Illinois National Guard and no claim is made for medical or hospital bills.

Claimant did however as a result of the accident lose a substantial amount of time because of his inability to work while convalescing. While the evidence indicates that he took some interest in the work of his Military Company before May 1, 1934, he was not able to engage in any remunerative employment until the latter date. If he had been injured while working as an employee for either the State or for a private industrial employer he would, under the provisions of the Workmen's Compensation Act of Illinois, have been entitled to fifty (50) per cent of his average weekly wage for the period of his temporary total incapacity at a rate not to exceed Fifteen ($15.00) Dollars per week. This would

have extended from February 8, 1933 to May 1, 1934 and would have amounted to Nine Hundred Sixty-seven ($967.00) Dollars. In the absence of a definite rule by which the court can be guided, it is difficult to determine how closely one should follow the awards made in industrial cases. In many cases of injuries suffered by men in the service of the National Guard, temporary financial aid is given by orders of the Commander-in-Chief. No such temporary aid is shown by the record to have been given in this case. From all the facts and circumstances we believe that an award of One Thousand ($1,000.00) Dollars is within the proper exercise of discretion given to the court herein. An award of One Thousand ($1,000.00) Dollars is hereby accordingly made in favor of claimant by reason of the accident in question.